D. Maimon Kirschenbaum
Denise A. Schulman
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------x

| | |
|---|---|
| KE'MON CHAPMAN, on behalf of himself and others similarly situated, | CASE NO. 23-CV-2778 |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | |
| CITY WINERY NY – PIER 57, LLC, | **FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION** |
| Defendant. | **DEMAND FOR JURY TRIAL** |

-------------------------------------------------x

Plaintiff, on behalf of himself and all others similarly situated, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3. Defendant City Winery NY – Pier 57, Inc. ("City Winery" or "Defendant") is a New York corporation that owns and operates the City Winery restaurant and 2 adjacent concert venues on New York's Pier 57 in Manhattan.

4. Defendant City Winery has an annual gross volume of sales in excess of $500,000.

5. Plaintiff Ke'Mon Chapman was employed by Defendant as a server from July 2022 until March 2023.

## FLSA COLLECTIVE ACTION ALLEGATIONS

6. Plaintiff brings the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt service employees employed by Defendant at City Winery on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

7. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them proper overtime pay.  The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

8. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).  The FLSA Collective

Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendant.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

9. Plaintiff brings the state law Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt service employees employed by Defendant at City Winery on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

10. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant.  Notice can be provided by means permissible under said F.R.C.P. 23.

11. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant, upon information and belief, there are more than forty (40) members of the Class.

12. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay minimum wage and overtime

3

compensation.  Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

13. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

14. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing

incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

15. Upon information and belief, Defendant and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

16. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a) Whether Defendant employed Plaintiff and the Class members within the meaning of the New York law.

    b) At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay Plaintiff and the Class members for their work.

    c) What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Plaintiff and the Class members at all.

    d) Whether Defendant paid Plaintiff and the Class members the state minimum wage for all hours worked.

 e) Whether Defendant properly compensated Plaintiff and Class members for overtime.

 f) Whether Defendant provided wage statements to Plaintiff and Class members that contained the correct number of hours worked.

## FACTS

17. Plaintiff's Consent to Sue form is attached hereto as Exhibit A.

18. Defendant committed the following alleged acts knowingly, intentionally and willfully.

19. Defendant knew that nonpayment of minimum wage and nonpayment of overtime would economically injure Plaintiff and FLSA Collective Plaintiffs and violated federal and state laws.

20. Defendant paid Plaintiff $10 per hour for his hours worked.

21. This was less the full NY Minimum Wage and was in fact New York's foodservice workers minimum wage during the time Plaintiff worked.

22. However, Defendant was not entitled to pay Plaintiff the lower foodservice workers' minimum wage, because every shift that Plaintiff worked, he spent either more than 2 hours or 20% of his workday performing non-tipped sidework.

23. By way of example, when Plaintiff worked at Defendant's concert venues, he was scheduled to arrive at 4:30 p.m.  Customers were not admitted until 6:00 p.m.  Before customers arrived, Plaintiff performed sidework including getting materials to set the tables, finding silverware, setting the room, and attending a pre-shift meeting.  There was also a 30-minute break during this period.  After the customers left the concert, which was typically between 9:30 p.m. and 11:00 p.m., Plaintiff was required to perform an additional 30 to 60 minutes of sidework,

which involved collecting dirty glasses, loading them into glass crates, and putting away clean glasses for tomorrow's shift.

24. Plaintiff and his coworkers typically arrived and began working even earlier than 4:30, often as early as 3:30, in order to get an early start on the sidework.

25. When Plaintiff worked at the restaurant, Plaintiff typically was required to arrive at 3:45 p.m. Plaintiff performed sidework and attended a pre-shift meeting until about 5:00 p.m. with a 30-minute break.

26. Throughout the restaurant shift, servers were required to roll silverware for the entire building, *i.e.*, both the restaurant and the concert venues. This consisted of a massive amount of work, as there were 12 full bins of silverware that were to be rolled by the servers on duty on a given night.

27. Plaintiff went to a designated section during his shift to roll silverware when he could find the time.

28. The restaurant typically closed at about 10:00 p.m. on weekdays and 11:00 p.m. on weekends. After closing, Plaintiff was required to roll silverware for at least half an hour.

29. Throughout the course of any given night, Plaintiff's sidework, pre-shift meeting attendance, and silverware rolling added up to at least 2 hours.

30. Approximately 1-2 times per week, a manager would clock out Plaintiff during his shift before he finished working for Defendant.

31. Specifically, during the last phase of Plaintiff's shift, while he was completing side-work and after he had stopped serving tables, Defendant would often clock out Plaintiff while he was still doing side-work.

32. Plaintiff became aware of this because on days when a manager clocked him out early, at the end of his shift when the side-work was completed, Plaintiff would go to the POS system to clock out, only to find that he had been clocked out already.

33. On other occasions, after Plaintiff's end of shift side-work was complete, he would notify a manager that he was finished with the work, and the manager would tell Plaintiff that they had already clocked him out and that he was free to leave.

34. This time shaving resulted in Defendant failing to pay Plaintiff at all for some of the hours he worked, including overtime hours.

35. Plaintiff's weekly wage statements did not reflect all of his hours worked. As a result, Defendant failed to pay Plaintiff for all of his hours worked.

36. As Defendant always paid Plaintiff for the number of hours reflected on his wage statements, had Defendant provided Plaintiff with weekly wage statements that contained his actual hours worked, it would have paid Plaintiff for all the hours he worked.

37. As such, Plaintiff was paid less because Defendant failed to give Plaintiff wage statements that reflected all of the hours Plaintiff worked for Defendant.

38. By failing to provide Plaintiff with wage statements identifying his actual hours worked, Defendant prevented Plaintiff from determining and seeking payment for his precise amount of unpaid hours.

39. Plaintiff often worked more than 40 hours per week.

40. For example, in the week ending 8/21/2022, Plaintiff worked 42.35 hours.

41. Because Defendant's inappropriately calculated Plaintiff's rate as the foodservice workers' minimum wage, it inappropriately applied a tip credit to Plaintiff's overtime hours.

8

42. Defendant committed the foregoing acts against the Plaintiff, the FLSA Collective members and members of the Class.

## FIRST CLAIM FOR RELIEF
**(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.*
Brought by Plaintiff on Behalf of Himself
and the FLSA Collective Plaintiffs)**

43. Plaintiff, on behalf of himself and other FLSA Collective Plaintiffs, realleges and incorporate by reference all previous paragraphs.

44. Throughout the statute of limitations period covered by these claims, Plaintiff and the other FLSA Collective Plaintiffs worked in excess of forty (40) hours per workweek.

45. At all relevant times, Defendant operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Class members the appropriate overtime rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

46. At all relevant times, Defendant willfully, regularly and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

47. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*
Brought by Plaintiff on Behalf of Himself and the Class)**

48. Plaintiff, on behalf of himself and the Class members, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

49. Defendant knowingly paid Plaintiff and the Class members less than the New York State minimum wage.

50. Defendant did not pay Plaintiff and the Class members the New York minimum wage for all hours worked.

51. As a result of Defendant' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**THIRD CLAIM FOR RELIEF**
**(New York Overtime Violations,**
**N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4**
**Brought by Plaintiff on Behalf of Himself and the Class)**

52. Plaintiff, on behalf of himself and the Class members, realleges and incorporates by reference all previous paragraphs.

53. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty (40) hours in any workweek.

54. Throughout the Class Period, Defendant willfully, regularly and repeatedly failed to pay Plaintiff and the Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

55. As a result of Defendant' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FOURTH CLAIM FOR RELIEF**
**(New York Wage Statement Requirements,**
**N.Y. Lab. L. §§ 195, 198**
**Brought by Plaintiff on Behalf of Himself and the Class)**

56.   Plaintiff, on behalf of himself and the Class members, realleges and incorporates by reference all previous paragraphs.

57.   Defendant did not provide Plaintiff and the members of the Class with wage statements that contained the required information under N.Y. Lab. Law § 195. For example, the wage statements Defendant provided to Plaintiff and the members of the Class did not reflect all hours worked by Plaintiff and the members of the Class.

58.   As a result of Defendants' unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages and penalties, pursuant to N.Y. Lab. Law § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

   A.   Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

   B.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

C.  Designation of this action as a class action pursuant to F.R.C.P. 23.

D.  Designation of Plaintiff as Representative of the Class.

E.  An award of damages, according to proof, including liquidated damages, to be paid by Defendant;

F.  Penalties available under applicable laws;

G.  Costs of action incurred herein, including expert fees;

H.  Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I.  Pre-judgment and post-judgment interest, as provided by law; and

J.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated:  New York, New York
       August 1, 2023

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: /s/*Michael DiGiulio*
D. Maimon Kirschenbaum
Denise A. Schulman
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 981-9587

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.