**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**KE'MON CHAPMAN, on behalf of himself**
**and others similarly situated,**

                                       **CASE NO. 23 CV 2778 (MMG)**

        **Plaintiff,**

          **v.**

**CITY WINERY NY – PIER 57, LLC,**

        **Defendant.**
-------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

D. Maimon Kirschenbaum
Denise A. Schulman
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640

*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 1

  A.   The Lawsuit ........................................................................................................... 1

  B.   Discovery and Settlement Discussions ................................................................. 3

  C.   Settlement Terms ................................................................................................... 3

  D.   Release of Claims .................................................................................................. 5

III.  ARGUMENT .............................................................................................................. 5

  A.   The Proposed Settlement Should Be Approved..................................................... 5

    i.   The proposed settlement is fair, reasonable, and adequate and should be approved...... 6

      a.   Procedural fairness ...................................................................................... 6

      b.   Substantive fairness ..................................................................................... 7

        1.   Complexity, expense, and likely duration of the litigation (*Grinnell* factor 1 and Rule 23(e)(2)(C)(i)) ...................................................................................... 7

        2.   Reaction of the class (*Grinnell* factor 2).................................................... 8

        3.   Stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3) .......................................................................................... 9

        4.   Risks of establishing liability (*Grinnell* factor 4 and Rule 23(e)(2)(C)(i)).............. 9

        5.   Risks of establishing damages (*Grinnell* factor 5).................................. 10

        6.   Risks of maintaining the class action through trial (*Grinnell* factor 6 and Rule 23(e)(2)(C)(i)) ....................................................................................... 11

        7.   Ability of Defendants to withstand a greater judgment (*Grinnell* factor 7) ......... 11

        8.   Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation (*Grinnell* factors 8 and 9 and Rule 23(e)(2)(C)(i)) ... 12

        9.   The effectiveness of the proposed method of distributing relief (Rule 23(e)(2)(C)(ii)) ...................................................................................... 13

        10.  The terms of the proposed attorneys' fee award (Rule 23(e)(2)(C)(iii)) .............. 14

        11.  The settlement treats Class Members equitably (Rule 23(e)(2)(D))..................... 14

    ii.  The Notice to Class Members Meets the Requirements of Rule 23 ............................ 17

  B.   Approval Of The Settlement Of The FLSA Claims Is Also Appropriate........................ 18

  C.   The Claims Administrator's Fees Should Be Approved....................................... 18

  D.   Class Counsel's Attorneys' Fees And Costs Should Be Approved............................. 18

    i.   Class Counsel's Requested Fee Award is Reasonable ......................................... 19

      a.   Goldberger factors ....................................................................................... 20

        1.   Counsel's time and labor ......................................................................... 20

2. The litigation's magnitude and complexity and the risks of litigation ................ 22

3. Quality of the representation ................................................................... 22

4. The fee is reasonable in relation to the settlement ................................ 23

5. Public policy considerations ................................................................... 24

IV. CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Bannerman v. Air-Sea Packing Group*, No. 18 CV 6146,
   2020 U.S. Dist. LEXIS 12868 (S.D.N.Y. Jan. 24, 2020)....................................17,19,23

*Banyai v. Mazur*, No. 00 Civ. 9806,
   0207 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007) ..................................21

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .......................................22

*Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595,
   2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ...................................12,18

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).......................................*passim*

*Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 CV 3203,
   2018 U.S. Dist. LEXIS 170192 (E.D.N.Y. Sept. 28, 2018)................................21

*D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 CV 3334,
   2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023)................................13,21,23

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................20

*Deas v. Alba Carting & Demolition Inc.*, No. 17 CV 3947,
   2021 U.S. Dist. LEXIS 38803 (S.D.N.Y. Mar. 2, 2021) ....................................17

*Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) .......................................23

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494,
   2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 11, 2015)...................................24

*Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 CV 7854,
   2021 U.S. Dist. LEXIS 27462 (S.D.N.Y. Feb. 12, 2021)...................................13,23

*D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787,
   2008 U.S. Dist. LEXIS 96034 (E.D.N.Y. Nov. 25, 2008)...................................11

*Emeterio v. A&P Rest. Corp.*, No. 20 CV 970,
   2022 U.S. Dist. LEXIS 14598 (S.D.N.Y. Jan. 26, 2022).....................................13,17

*Flores v. Anjost Corp.*, No. 11 Civ. 1531,
   2014 U.S. Dist. LEXIS 11026 (S.D.N.Y. Jan. 29, 2014)....................................17

*Flores v. CGI Ins.*, No. 22 CV 350,
    2022 U.S. Dist. LEXIS 192572 (S.D.N.Y. Oct. 21, 2022) ................................7,9,16

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2015) ..................................15,16,24

*Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452,
    2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ....................................23

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386,
    1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991)....................................11

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)....................................20

*Guevoura Fund Ltd. v. Sillerman*, No. 15 CV 7192,
    2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ................................9

*Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029,
    2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) ................................24

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024)....................................10

*Hamadou v. Hess Corp.*, No. 12 Civ. 0250,
    2015 U.S. Dist. LEXIS 79777 (S.D.N.Y. June 18, 2015)....................................17

*Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043,
    2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015)................................9,12

*Hicks v. Morgan Stanley & Co., Inc.*, No. 01 Civ. 10071,
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ....................................24

*In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389,
    2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ..................................20

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)..............22,23

*In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262,
    2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ..................................20

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997).......................10,11

*In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884,
    2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007)....................................23

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................5,18

*In re Tenaris S.A. Sec. Litig.*, No. 18 CV 7059,
 2024 U.S. Dist. LEXIS 72980 (E.D.N.Y. Apr. 22, 2024) .................................7

*Jara v. Felidia Rest.*, No. 17 CV 9622,
 2018 U.S. Dist. LEXIS 241262 (S.D.N.Y. Dec. 17, 2018) .............................24

*Johnson v. Brennan*, No. 10 Civ. 4712,
 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011)..............................17

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381,
 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ..................................20

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................*passim*

*Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518,
 2024 U.S. Dist. LEXIS 17358 (S.D.N.Y. Sept. 24, 2024)................................23

*Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650 (S.D.N.Y. 2015) .........................14

*Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023) ...................................6,7,14,15

*Murphy v. Lajaunie*, No. 13 CV 6503,
 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) .................................23

*Nichols v. Noom, Inc.*, No. 20 CV 3677,
 2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 202) ..................................21

*Park v. FDM Grp., Inc.*, No. 16 CV 1520,
 2021 U.S. Dist. LEXIS 12819 (S.D.N.Y. Jan. 22, 2021)...................................17,19

*Pefanis v. Westway Diner, Inc.*, No. 08 CV 002,
 2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010)...................................23

*Pickard v. Onsite Facility Servs., LLC*, No. 22 CV 207,
 2023 U.S. Dist. LEXIS 191242 (N.D.N.Y. Oct. 25, 2023) ...............................8,9,13

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ...........................17,19

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011)...................23

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ...........................16

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................19

*Sukhnandan v. Royal Health of Long Island LLC*, No. 12 CV 4216,
 2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) .................................22,24

*Taft v. Ackermans*, No. 02 Civ. 7951,
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)......................................21,22,24

*Teachers Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814,
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004).....................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ...........................6,10,19

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693,
    2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ...................................25

**Statutes, Rules, Regulations, and Other Authorities**

12 N.Y.C.R.R. § 146-1.3 ...................................................................................................2

12 N.Y.C.R.R. § 146-2.2 ...................................................................................................2

12 N.Y.C.R.R. § 146-3.4 ...................................................................................................2

29 U.S.C. § 202 ................................................................................................................24

29 U.S.C. § 216................................................................................................................18

Fed. R. Civ. P. 23 .....................................................................................................*passim*

Fed. R. Civ. P. 30 ..............................................................................................................3

N.Y. Lab. L. § 195 ...................................................................................................*passim*

N.Y. Lab. L. § 650 ...........................................................................................................24

U.S. Const., Art. III...........................................................................................................1

## I.    INTRODUCTION

Plaintiff respectfully submits this memorandum of law in support of his motion for final approval of the parties' October 30, 2024 Settlement Agreement and Release ("Settlement Agreement" or "Agreement").[1]

## II.    BACKGROUND

### A.  The Lawsuit

Defendant City Winery NY – Pier 57 LLC ("Defendant") owns and operates the City Winery concert venue/restaurant located at Pier 57 in Manhattan ("City Winery Pier 57"). (Schulman Decl. ¶ 4.)  Plaintiff Ke'Mon Chapman worked at City Winery Pier 57 as a server.  (*Id*. at ¶ 5.)  On April 3, 2023, Plaintiff commenced this action on behalf of himself and a putative class of similarly situated service employees, alleging that Defendant did not properly compensate service employees for overtime hours worked, in violation of the FLSA and New York law and improperly paid service employees pursuant to a tip credit, in violation of New York law.  (*Id*. at ¶ 6.)  On April 3, 2023, former City Winery Pier 57 server Sheyla Pallet joined this action as an Opt-In Plaintiff.  (*Id*. at ¶ 7.)  Plaintiff filed an amended complaint on July 14, 2023, which added claims for unpaid off the clock work, and a second amended complaint on August 1, 2023, which added a claim for failure to provide wage statements that complied with N.Y. Lab. L. § 195(3). (*Id*. at ¶ 8.)  Defendant subsequently moved to dismiss the N.Y. Lab. L. § 195(3) claim for lack of Article III standing, which motion was denied on November 30, 2023.  (Dkt. Nos. 42, 68.)  On September 15, 2023, Plaintiff moved to conditionally certify an FLSA collective and disseminate notice enabling interested servers, bartenders, and service assistants to join this action as Opt-In

---

[1] In support of this motion, Plaintiffs submit the February 13, 2025 declaration of Denise A. Schulman ("Schulman Decl."), and exhibits thereto ("Ex. [number]") and the February 12, 2025 declaration of Jonathan Paul ("Paul Decl.") and exhibits thereto ("Ex. [letter]").

Plaintiffs. (Dkt. No. 43.) The Court granted that motion on November 2, 2023 (Dkt. No. 65), and notice was duly sent to prospective Opt-In Plaintiffs. (Schulman Decl. ¶ 9.) 22 individuals filed consent to sue forms following the issuance of notice, two of whom subsequently withdrew from the case and two of whose FLSA claims were dismissed by the Court for failing to participate in discovery. (*Id*. at ¶ 10.)

Plaintiff's minimum wage claim is based primarily on Defendant's use of the tip credit to pay servers, bartenders, and service assistants. Plaintiff alleges that Defendant was not entitled to use the tip credit because it required service employees to spend at least two hours or 20% of their shifts performing non-tipped work such as cleaning, setting tables, polishing silverware and glassware, rolling napkins, and other sidework. (Schulman Decl. ¶¶ 11-12.) Thus, Plaintiff contends that Defendant's use of the tip credit was unlawful under the relevant regulations. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.2, 146-3.4. Similarly, because Defendant was not entitled to use a tip credit, its payment of the tip credit overtime rate was an underpayment and violated the FLSA and New York law. (*Id*. at ¶ 13.)

Plaintiff further contends that he and other service employees regularly worked uncompensated off the clock time as a result of Defendant's managers clocking service employees out before they finished working. This off the clock time included both regular and overtime hours, and thus resulted in both minimum wage and overtime violations. (Schulman Decl. ¶ 14.) Finally, Plaintiff alleges that Defendant violated N.Y. Lab. L. § 195(3) by failing to include all of service employees' hours worked on their wage statements. (*Id*. at ¶ 15.)

Defendant has denied, and continues to deny, all of Plaintiff's allegations and maintains that it paid employees properly in compliance with applicable law. Defendant further denies that the case can appropriately be maintained as a class or collective action on any of the claims asserted

by Plaintiff.

### B. Discovery and Settlement Discussions

The parties engaged in substantial discovery prior to reaching a settlement. Defendants deposed Plaintiff and Pallet prior to conditional certification and five additional Opt-In Plaintiffs following the close of the opt-in period. (Schulman Decl. ¶ 16.) Plaintiff took five depositions, including three City Winery Pier 57 managers and, as Fed. R. Civ. P. 30(b)(6) witnesses, Defendant's vice president of human resources and director of systems and licenses. (*Id*. at ¶ 17.) Plaintiff and all of the Opt-In Plaintiffs remaining in the case completed paper discovery, and Defendants produced Plaintiff's and the Opt-In Plaintiffs' personnel files, time records, and pay records, as well as relevant policy documents and documents concerning the timing and run times of concerts and similar events at City Winery Pier 57. (*Id*. at ¶ 18.)

On September 5, 2024 the parties attended a private mediation with mediator Ruth Raisfeld. (*Id*. at ¶ 20.) While the parties did not reach a settlement at the mediation, they continued to negotiate and ultimately agreed to settle this case for $725,000. (*Id*. at ¶ 21.) Plaintiff believes this settlement amount is highly favorable to the Class in light of their risks in this litigation. (*Id*. at ¶ 22.)

### C. Settlement Terms

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of $725,000.00 (the "Settlement Payment"). (Ex. 1 ¶¶ 1.20, 3.1(A).) The Settlement Payment includes payments to Class Members, attorneys' fees and costs, service awards to the Plaintiffs who participated in discovery, and settlement administration costs. (*Id*. at ¶¶ 3.1(A), 3.2, 3.3, 3.4.)

The Net Settlement Fund ("NSF") is the remainder of the Settlement Payment after

deductions for Court-approved attorneys' fees and costs, Court-approved service awards, settlement administration costs, and any other costs, expenses, fees, or other distributions (other than payments to Class Members) associated with the settlement.  (*Id*. at ¶ 1.20.)  Plaintiff's counsel will seek recovery of their litigation costs and attorneys' fees of no more than one-third of the Settlement Payment.  (*Id*. at ¶ 3.2.)

The NSF is the remainder of the Settlement Payment after deductions for Court-approved attorneys' fees and costs, Court-approved service awards, settlement administration costs, and any other costs, expenses, fees, or other distributions (other than payments to Class Members) associated with the settlement.  (*Id*. at ¶ 1.21.)  The NSF shall be distributed among Class Members who worked at City Winery Pier 57 as servers, bartenders, and service assistants between April 3, 2017 and September 20, 2024.  (*Id*. at ¶¶ 1.8, 1.18, 1.23, 3.4.)  Each Class Member will receive one point for every hour worked at City Winery Pier 57 as a server or bartender between April 3, 2017 and April 30, 2023 and one point for every hour worked at City Winery Pier 57 as a service assistant between April 3, 2017 and December 31, 2022.[2]  (*Id*. at ¶ 3.4(B).)  The NSF will be distributed on a *pro rata* basis according to each Class Member's total points.  (*Id*.)  Notwithstanding this formula, no Class Member will be awarded a settlement share that is less than $100.  (*Id*. at ¶ 3.4(B)(2).)  Settlement payments will be made to all Class Members who do not opt out of the Class during the 60-day Opt-Out Period following the first mailing of the Class Notice.  Class Members will not need to submit claim forms to receive payment.  (*Id*. at ¶¶ 2.6, 3.4(D).)

Defendant will fund the settlement by the later of 30 days after entry of a final approval

---

[2] The cut off dates for point accrual are based on when Defendant stopped paying certain categories of employees pursuant to a tip credit.  Specifically, Defendant began paying service assistants at least the full minimum wage, rather than the tip credit minimum wage, in or around January 2023, and it started paying servers and bartenders at least the full minimum in or around May 2023.  (Schulman Decl. ¶ 11.)

order or September 1, 2025, and settlement checks will be mailed 15 days after the settlement is funded.  (*Id*. at ¶¶ 3.1(B), 3.4(D).)

Settlement checks will be valid for 90 days.  Class Members can request new Settlement Checks up to 180 days from the distribution of Settlement Checks.  (*Id.* at ¶ 3.4(E).)  Any money still remaining in the Settlement Fund on the later of one hundred eighty-one (181) days after the third distribution Settlement Checks are issued or fifty (50) days after the last reissued settlement check is issued shall revert back to Defendant.  (*Id*. at ¶ 3.4(F).)

### D.  Release of Claims

In return for the above consideration, all Class Members who do not opt out of the Class will release all state law wage and hour claims against Defendant for work performed at City Winery Pier 57.  (*Id*. at ¶ 4.1.)  All Class Members who cash their settlement checks will release all FLSA claims for work performed at or on behalf of City Winery Pier 57 against Defendant. (*Id*. at ¶ 4.2.)

## III.    ARGUMENT

### A.  The Proposed Settlement Should Be Approved

Fed. R. Civ. P. 23(e) ("Rule 23") requires judicial approval of any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet . . . it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### i. The proposed settlement is fair, reasonable, and adequate and should be approved

In order to approve a class action settlement, courts must determine whether the settlement fair, reasonable, and adequate based on the negotiating process and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). In doing so, courts must consider the factors set forth in Rule 23(e)(2), specifically, whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

### a. Procedural fairness

The factors relevant to the procedural fairness of a settlement are whether the class representative and class counsel have adequately represented the class and the settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A), (B); *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Both of these factors are satisfied here.

As set forth in Plaintiff's preliminary approval motion, Class Representative Ke'Mon Chapman has fairly and adequately protected the interests of all Class Members throughout this litigation, and he has no known conflicts with Class Members. No Class Member has objected to Chapman's role as Class Representative. (Paul Decl. ¶ 7.) Similarly, Class Counsel are highly experienced in class action wage and hour litigation and have vigorously litigated this hard-fought action, ultimately securing an excellent result for the Class. (Schulman Decl. ¶¶ 35-41, 46-48; *see*

*also infra* at 22-23.)  Thus, Rule 23(e)(2)(A) is satisfied.  *See In re Tenaris S.A. Sec. Litig.*, No. 18 CV 7059, 2024 U.S. Dist. LEXIS 72980, at *15-17 (E.D.N.Y. Apr. 22, 2024).

Finally, the settlement was negotiated at arm's length, which negotiations included a mediation with an experienced employment law mediator, and following extensive discovery that enabled Plaintiff to evaluate both the strength and value of the Class's claims.  (Schulman Decl. ¶¶ 16-21.)  Accordingly, the settlement is procedurally fair.  *Flores v. CGI Inc.*, No. 22 CV 350, 2022 U.S. Dist. LEXIS 192572, at *16-18 (S.D.N.Y. Oct. 21, 2022).

### b.  Substantive fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *Moses*, 79 F.4th at 242-43.  Rather than applying these factors formulaically, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  *Grinnell*, 495 F.2d at 468.  Courts must also consider the Rule 23(e)(2)(C), (D) factors, many of which overlap with the *Grinnell* factors.  *Moses*, 79 F.4th at 243, 244.

### 1.  Complexity, expense, and likely duration of the litigation (*Grinnell* factor 1 and Rule 23(e)(2)(C)(i))

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation.  *Maley v. Del Global Tech. Corp.*,

186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Pickard v. Onsite Facility Servs., LLC*, No. 22 CV 207, 2023 U.S. Dist. LEXIS 191242, at *16 (N.D.N.Y. Oct. 25, 2023) (internal quotation omitted). This case is no exception. There are 371 Class Members (*see* Paul Decl. ¶ 4), claims have been brought under federal and state statutes, and there are numerous disputed factual and legal issues. These disputes include the amount of time Class Members spent performing non-tipped sidework, whether Class Members worked off the clock and, if so, for how much time, and whether Plaintiff and the Class Members have standing for their N.Y. Lab. L. § 195(3) claims. (Schulman Decl. ¶¶ 25-26.)

Further litigation without settlement would necessarily result in additional expense and delay. Completing discovery and motion practice – including Rule 23 class certification, FLSA collective decertification, and summary judgment– would be time consuming and expensive for both sides. Preparing and putting on evidence on the complex factual and legal issues at trial would also consume a great deal of time and resources for both sides, as well as require substantial judicial resources to adjudicate the parties' disputes. Any judgment would likely be appealed, thereby extending the duration of the litigation and depleting any possible recovery. This Settlement, on the other hand, makes monetary relief available to Rule 23 Class Members in a prompt and efficient manner. Therefore, these factors weigh in favor of final approval.

### 2.  Reaction of the class (*Grinnell* factor 2)

The positive reaction of the Class Members overwhelmingly supports approval of the settlement. In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that object to and opt out of the settlement. Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the

settlement.  *Flores*, 2022 U.S. Dist. LEXIS 192572, at *19-20.

Claims Administrator Xpand Legal Consulting mailed the Class Notice to 371 Class Members on December 4, 2024.  (Paul Decl. ¶ 4.)  The deadline for these Class Members to opt out and/or object to the settlement was January 31, 2025.  (*Id*. at ¶ 8.)  No Class Members have objected to or opted out of the settlement.  (*Id.* at ¶¶ 6-7.)  Thus, Class Members' satisfaction with the settlement is clear.

### 3.  Stage of the proceedings and the amount of discovery completed (*Grinnell* factor 3)

Courts consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement.  *Pickard*, 2023 U.S. Dist. LEXIS 191242, at *17.  Courts look at whether "counsel 'possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'"  *Hart v. RCI Hosp. Holdings*, No. 09 Civ. 3043, 2015 U.S. Dist. LEXIS 126934, at *28 (S.D.N.Y. Sept. 22, 2015).  The parties entered into the proposed Settlement Agreement after taking extensive discovery, including 12 depositions, full paper discovery concerning the Plaintiff and Opt-In Plaintiffs, and Defendant's production of relevant policy documents.  (Schulman Decl. ¶¶ 16-18.)  This enabled Plaintiff and Plaintiffs' counsel to evaluate the strengths, weaknesses, and value of the claims.  (*Id.* at ¶ 19.)  Accordingly, this factor weighs in favor of approving the settlement.

### 4.  Risks of establishing liability (*Grinnell* factor 4 and Rule 23(e)(2)(C)(i))

"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the certainty of recovery, against the continuing risks of litigation."  *Guevoura Fund Ltd.*

*v. Sillerman*, No. 15 CV 7192, 2019 U.S. Dist. LEXIS 218116, at *23 (S.D.N.Y. Dec. 18, 2019).

Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

Defendant has asserted multiple factual and legal defenses to Plaintiff's claims. As discussed *supra*, the parties dispute whether Class Members spent more than two hours or 20% of their shifts performing non-tipped work and whether and to what extent Class Members worked off the clock. Many of the facts underlying these disputes would have to be determined based on testimony rather than documents, heightening the risk of establishing liability. If litigation continued, Defendant would also again challenge Plaintiff's and the Class Members' standing on the N.Y. Lab. L. § 195(3) claims. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). While Plaintiff believes there is standing, this still presents a significant risk.

Finally, Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates this uncertainty, and is therefore preferable to trial, which may result in a smaller per-plaintiff recovery or no recovery at all.

### 5.  Risks of establishing damages (*Grinnell* factor 5)

Courts also consider the risks of establishing damages. Regardless of Plaintiff's ability to establish liability, he would still face "risks in proving [their] damages at trial." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119. While damages would be calculated primarily based on Defendant's documents, the documents would not conclusively establish all of the shifts where Defendant improperly used the tip credit, and nor would they establish the amount of off the clock time worked by Class Members.

Moreover, "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### 6. Risks of maintaining the class action through trial (*Grinnell* factor 6 and Rule 23(e)(2)(C)(i))

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified. *D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991). Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class. *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18. Here, no non-settlement class has yet been certified. Defendant would oppose certification, likely arguing that there are individualized issues regarding whether and when Class Members worked off the clock and the amount of time Class Members spent performing non-tipped work. While Plaintiff believes class certification is appropriate for the reasons discussed above, the fact that Defendants would oppose class certification outside the settlement context does create a risk. Accordingly, this factor weighs in favor of approval.

### 7. Ability of Defendants to withstand a greater judgment (*Grinnell* factor 7)

Courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57. While Plaintiff is not fully aware of Defendant's financial condition, the settlement amount is substantial, and as a condition of settlement

Defendant would not agree to payment in less than a year from when the parties reached a settlement, suggesting that the settlement amount is not immediately available to it.  (Schulman Decl. ¶ 27.)  Thus, this factor also weighs in favor of approval.

### 8. Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation (*Grinnell* factors 8 and 9 and Rule 23(e)(2)(C)(i))

"The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'"  *Hart*, 2015 U.S. Dist. LEXIS 126934, at *31.  The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment."  *Maley*, 186 F. Supp. 2d at 365.  These factors weigh strongly in favor of approval of the Settlement.

> [T]here is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

*Capsolas v. Pasta Res., Inc.*, No. 10 CV 5595, 2012 U.S. Dist. LEXIS 144651, at *18 (S.D.N.Y. Oct. 5, 2012) (internal quotation marks omitted).

Plaintiff estimates that the Class's maximum possible damages are approximately $2.263 million.  Of this, the maximum amount of unpaid tip credit is $542,580, and the Class could recover an equal amount of liquidated damages.  The maximum N.Y. Lab. L. § 195(3) damages are $1.108 million, and Plaintiff estimates that the unpaid wages for off the clock time total no more than $35,000, plus an equal amount as liquidated damages.  (Schulman Decl. ¶ 24.)  Accordingly, Class Members' maximum out of pocket loss is approximately $577,580, which is substantially less than the settlement amount.

While there is a possibility that the Class may be awarded more money after trial (and appeal), in light of the risks of the case described *supra*, the Settlement provides the significant benefit of a guaranteed and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road" or, worse, a larger judgment which the Class is unable to collect. *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004); *see also Pickard*, 2023 U.S. Dist. LEXIS 191242, at *21 (approving settlement equal to 16% of maximum unpaid wages); *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21 CV 3334, 2023 U.S. Dist. LEXIS 131029, at *18-19 (E.D.N.Y. July 28, 2023) (approving settlement that was 5% of best possible recovery); *Emeterio v. A&P Rest. Corp.*, No. 20 CV 970, 2022 U.S. Dist. LEXIS 14598, at *23-24 (S.D.N.Y. Jan. 26, 2022) (approving settlement that was 25% of best possible recovery); *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 CV 7854, 2021 U.S. Dist. LEXIS 27462, at *14 (S.D.N.Y. Feb. 12, 2021) (approving settlement that was 28% of best possible recovery).

### 9. The effectiveness of the proposed method of distributing relief (Rule 23(e)(2)(C)(ii))

The method of distributing relief is effective and fair. Checks will be mailed to all Class Members without Class Members having to submit claim forms. (Ex. 1 ¶ 3.4(E).) Class Members may request reissued settlement checks up to 180 days after the settlement checks are mailed. (*Id.* at ¶ 3.4(G).) This leaves ample time – over a year from when the Notice was mailed – for any Class Members who do not receive their checks (due to, for example, a change in address or USPS issue) to claim their checks. Mailing checks to all Class Members is self-evidently a highly effective method of distributing relief and thus satisfies Rule 23(e)(2)(C)(ii).

**10. The terms of the proposed attorneys' fee award (Rule 23(e)(2)(C)(iii))**

The terms of the proposed award of attorneys' fees, including timing of payment, are reasonable.  As discussed below, Class Counsel seeks a fee of $241,666.66, or one-third of the settlement.  This is in line with the percentage awards approved in this Circuit and is reasonable in light of, *inter alia*, Class Counsel's time and labor, the quality of the representation, and the magnitude, complexities, and risks of the litigation.  *See infra* at 21-23.  Attorneys' fees will be distributed on the same schedule as Class Members' awards, and thus attorneys' fees are not privileged over Class Members' payments.  (Ex. 1 ¶ 3.4(E).)

**11. The settlement treats Class Members equitably (Rule 23(e)(2)(D))**

Under Rule 23(e)(2)(D), a court must consider whether the allocation of the settlement among class members, including any service awards, is fair.  *Moses*, 79 F.4th at 253.  The Settlement's NSF allocation formula applies to all Class Members and is fair.  The NSF is allocated on a *pro rata* basis according to Class Members' hours paid in each covered position while that position was paid pursuant to a tip credit.  This is a reasonable method of allocation given that the tip credit claim represents the overwhelming portion of Class Members' compensatory and liquidated damages.  (Schulman Decl. ¶ 24.)  *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (internal quotation marks omitted).

The requested service awards are also fair and equitable.  Under the proposed Settlement Agreement, and subject to the Court's approval, separate payments of $7,500 to each of Named Plaintiff Ke'Mon Chapman and Opt-In Plaintiff Sheyla Pallet; $1,000 to each of Opt-In Plaintiffs

14

Daniel Brooks, Shannon Gonzalez, Steven Hill, Kashir Sims, and Jason Vogel, all of whom completed paper discovery and were deposed; and $500 to each of Opt-In Plaintiffs Jamy Aguilera, Thatcher Ford, Matthew Hendrix, Fathay Kiawu, Terrance Mackie, Christopher Manfugas, Brian Marrero, Jonathan Politz, Nicole Rivera, Jonathan Romero, Whitney Simmons, Henry Sistrunk, and Duval Valverde, all of whom completed paper discovery (the Named and Opt-In Plaintiffs identified above are referred to collectively as the "Service Award Plaintiffs").  (Agreement ¶ 3.3.) The 20 service awards total $26,500.  The Second Circuit recently affirmed that service awards are permissible in class action settlements.  *Moses*, 79 F.4th at 245, 253-56.  In fact,

> the equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation – often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process – "from having absent class members free ride on their efforts."

*Id*. at 245.  Service awards "are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2015).

The Service Award Plaintiffs expended considerable time and effort to assist Class Counsel with the case.  (Schulman Decl. ¶¶ 30-33.)  Chapman initiated this action, remained in regular communication with Class Counsel throughout the litigation, and brought Pallet into the case from the initiation of the case.  (*Id.* at ¶ 30.)  To be sure, Pallet filed her consent to sue form the same day the complaint was filed.  (Dkt. No. 4.)  Chapman and Pallet both provided declarations in support of Plaintiff's FLSA successful collective certification motion, which ultimately enabled additional people to join the case, and attended part of the mediation.  (Schulman Decl. ¶ 31.)

All of the Service Award Plaintiffs completed written discovery, meeting with Class

15

Counsel to do so and producing responsive documents if they had any, and explained relevant and necessary factual information to Class Counsel. (*Id*. at ¶ 32.) Chapman, Pallet, Brooks, Gonzalez, Hill, Sims, and Vogel were all deposed as well. (*Id*. at ¶ 33.) Thus, the Service Award Plaintiffs' assistance was crucial in the prosecution and proposed resolution of the case.

The Service Award Plaintiffs also assumed significant risks in prosecuting this action. In the employment context, where workers can be considered "troublemakers," individuals who take a leading role in litigation can be particularly vulnerable to retaliation. *E.g.*, *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less others be dissuaded."). In addition, this lawsuit is the first result in a Google search of the Named Plaintiff's full name (Ke'Mon Chapman), which has the potential to harm him in future job searches. (*Id*. at ¶ 34; Ex. 3.) *See Flores*, 2022 U.S. Dist. LEXIS 192572, at *30-31. Even where, as here, there is no evidence of any actual retaliation, service fees are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent class members. *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action . . . , the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded."). To be sure, as set forth in Plaintiff's August 21, 2024 letter, two current employees who filed consent to sue forms in this action subsequently withdrew them, and at least one prospective opt-in plaintiff reported being repeatedly discouraged by Defendant's managers from joining the case and did not submit a consent to sue for that reason. (Dkt. No. 118.) Defendant denies that it discouraged any employees from participating in this action. Nonetheless, by participating in this action when others were too afraid to do so, the Service Award Plaintiffs facilitated a settlement that will benefit

all Class Members.

The 20 service awards, totaling $26,500, are reasonable in comparison with those approved by other courts, and they represent just 3.66% of the Settlement Fund. *See*, *e.g.*, *Emeterio*, 2022 U.S. Dist. LEXIS 14598, at *31 (approving five service awards totaling $30,000 from $450,000 settlement); *Deas v. Alba Carting & Demolition Inc.*, No. 17 CV 3947, 2021 U.S. Dist. LEXIS 38803, at *9-10 (S.D.N.Y. Mar. 2, 2021) (approving nine service awards ranging from $5,000 to $15,000 and totaling $65,000 from $1.5 million settlement); *Park v. FDM Grp., Inc.*, No. 16 CV 1520, 2021 U.S. Dist. LEXIS 12819 (S.D.N.Y. Jan. 22, 2021) (awarding 21 service awards ranging from $1,500 to $20,000 and totaling $58,500 out of $4.135 million settlement); *Bannerman v. Air-Sea Packing Group*, No. 18 CV 6146, 2020 U.S. Dist. LEXIS 12868, at *4 (S.D.N.Y. Jan. 24, 2020) (awarding two service awards totaling $20,000 from $548,400 settlement); *Raniere v. Citibank Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving service awards ranging from $7,500 to $20,000); *Hamadou v. Hess Corp.*, No. 12 Civ. 0250, 2015 U.S. Dist. LEXIS 79777, at *10 (S.D.N.Y. June 18, 2015) (approving service awards totaling $33,000, or 4.77% of $691,350 settlement); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 U.S. Dist. LEXIS 11026, at *27 (S.D.N.Y. Jan. 29, 2014) (approving five service awards of $25,000 each from $1,050,000 settlement); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (awarding four service awards totaling $40,000, or 9.09% of $440,000 settlement). These modest awards are reasonable and equitable to the other Class Members, who are benefiting from the efforts of the Service Award Plaintiffs.

### ii.  The Notice to Class Members Meets the Requirements of Rule 23

As set forth in the Court's November 1, 2024 Order, the Settlement Notice satisfies the requirements of Rule 23(c)(2)(B).

### B.  Approval Of The Settlement Of The FLSA Claims Is Also Appropriate

Plaintiff seeks approval of the settlement of the FLSA wage and hour claims.  FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation. 29 U.S.C. § 216(b).  Because employees who do not opt-in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, and the high standard for approval of a class settlement does not apply to an FLSA settlement.  *See Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *18-19.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."  *Id.* at *19.  The adversarial nature of an FLSA action is typically a sufficient indication of a settlement's fairness.  *Id.*  "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, the settlement should be approved."  *Id.*  The settlement in this case was the result of vigorously contested litigation and arm's-length negotiation.  The settlement of the FLSA claims is thus fair and reasonable and should be approved.

### C.  The Claims Administrator's Fees Should Be Approved

Pursuant to the terms of the Settlement Agreement, the parties retained Xpand Legal Consulting to administer the settlement.  The Claims Administrator estimates that settlement administration costs will total $9,500.  (Paul Decl. ¶ 13.)  Thus, Plaintiff respectfully requests that the Court approve all of the Claims Administrator's reasonable fees to be paid from the settlement fund.

### D.  Class Counsel's Attorneys' Fees And Costs Should Be Approved

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses are

paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.* Here, the Settlement Agreement authorizes Class Counsel to receive one-third of the Settlement Payment as attorneys' fees as well as reimbursement of costs.

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), "[t]he trend in [the Second] Circuit is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks omitted); *see also Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3 (noting that the percentage of recovery method is "consistent with the trend in this Circuit") (internal quotation marks omitted); *Raniere*, 310 F.R.D. at 220 (noting that "[c]ourts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the 'lodestar method'"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases).

### i.  Class Counsel's Requested Fee Award is Reasonable

Pursuant to the Settlement Agreement, Class Counsel seeks $241,666.66 from the settlement fund as attorneys' fees and $18,059.39 as costs. (*See* Schulman Decl. ¶ 57 for a breakdown of the costs for which Class Counsel seek reimbursement.)  This request for a fee of one-third of the settlement fund is consistent with both the retainer agreement Class Counsel entered into with the Named Plaintiff (Schulman Decl. ¶ 51) and the norms of class litigation in this Circuit. *See*, *e.g.*, *Park*, 2021 U.S. Dist. LEXIS 12819, at *3-4; *Bannerman*, 2020 U.S. Dist.

LEXIS 12868, at *3-4; *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ("A fee award of one-third of the Settlement Fund 'is well within the range accepted by courts in this circuit.'"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (awarding fees of one-third of $42,000,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding fees of 33% of $9,250,000 settlement); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *76 (S.D.N.Y. Nov. 26, 2002) ("In this district alone, there are scores of common fund cases where fees alone (*i.e.*, where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund.").

### a. Goldberger factors

In determining whether a fee is reasonable, courts consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

### 1. Counsel's time and labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement. This case settled following the completion of pre-class certification discovery. The time invested in motion practice, managing the opt-in process, engaging in discovery, meeting with the Named Plaintiff and Opt-In Plaintiffs, engaging in settlement discussions, and managing the settlement notice phase was a reasonable expenditure of Class Counsel's time. *See, e.g., Maley*, 186 F. Supp. 2d at 371-372.

The parties completed pre-class certification discovery, which Class Counsel used to evaluate the claims and calculate damages. (Schulman Decl. ¶¶ 16-19.) Class Counsel spent substantial time responding to Defendants' discovery requests and handling discovery disputes. Class Counsel also fully briefed a successful motion for conditional collective certification of the FLSA collective and successfully opposed Defendant's motion to dismiss the NYLL §195(3) claim. Class Counsel engaged in mediation and spent significant time following the mediation to negotiate and finalize the formal settlement agreement and coordinate the administration of the settlement. (Schulman Decl. ¶ 54.) Moreover, through regular contact with the Service Award Plaintiffs, Class Counsel kept them informed of and involved in the action. *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class").

Class Counsel invested $178,027.50 worth of time – including 413.6 attorney hours and 55.3 paralegal/administrative assistant hours – in litigating and obtaining a fair settlement for the Class. (Schulman Decl. ¶ 49; Ex. 4.) In addition to reimbursement of costs, Class Counsel now seeks a fee of $241,666.66, or a lodestar multiplier of 1.36. When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007). The multiplier of 1.36 in this case is well within the range of multipliers approved in this Circuit. *E.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 131029, at *29-30 (2.07 multiplier); *Nichols v. Noom, Inc.*, No. 20 CV 3677, 2022 U.S. Dist. LEXIS 123146, at *33 (S.D.N.Y. July 12, 2022) (approving 2.88 multiplier and stating that it "is fully consistent with that found to be reasonable [in] other cases in this Circuit"); *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 CV 3203, 2018 U.S. Dist. LEXIS

170192, at *16-17 (E.D.N.Y. Sept. 28, 2018) (approving 2.3 multiplier and noting that "'[c]ourts regularly award lodestar multipliers from two to six times lodestar'"); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 CV 4216, 2014 U.S. Dist. LEXIS 105596, at *43 (S.D.N.Y. July 31, 2014) (2.98 multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (6.3 multiplier).  Accordingly, Class Counsel's time and labor weighs in favor of approving the requested fee.

### 2.  The litigation's magnitude and complexity and the risks of litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30 (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees.").  Class Counsel took this case pursuant to a retainer agreement with the named Plaintiff that stated that Counsel would receive a percentage of the recovery *only if* Plaintiff obtained a recovery.  As discussed *supra*, this was a complex litigation, and Plaintiff faced significant risks in establishing liability and damages.  Thus, Class Counsel risked receiving little or no payment for their work. (Schulman Decl. ¶¶ 53-55.)

### 3.  Quality of the representation

Class Counsel have extensive experience representing employees – and particularly restaurant employees – in wage-hour class and collective actions, as outlined in the Schulman Declaration ¶¶ 35-41, 46-48.  *E.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008 (RJS), at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (Ex. 5); *Shahriar*

22

*v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518, 2024 U.S. Dist. LEXIS 173358 (S.D.N.Y. Sept. 24, 2024) (denying defendants' motion to certify the class and granting in the main plaintiffs' motion for summary judgment); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) (certifying class and appointing JK co-class counsel); *Pefanis v. Westway Diner, Inc.*, No. 08 CV 002, 2010 U.S. Dist. LEXIS 93180 (S.D.N.Y. Sept. 7, 2010) (denying restaurant's motion for decertification of Rule 23 class and § 216(b) collective); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective).  Class Counsel used their experience to obtain an excellent result for the class.  *See In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class."). No Class Members objected to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court."  *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work."  *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). Defendants were represented in this action by experienced litigators with Akerman LLP.

### 4.  The fee is reasonable in relation to the settlement

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit[,]" particularly in wage and hour class settlements.  *Gilliam v. Addicts Rehab. Ctr.*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (wage and hour settlement); *see also*, *e.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 131029, at *26; *Delijanin*, 2021 U.S. Dist. LEXIS

27462, at *20; *Bannerman*, 2020 U.S. Dist. LEXIS 12868; *Jara v. Felidia Rest.*, No. 17 CV 9622, 2018 U.S. Dist. LEXIS 241262, at *6 (S.D.N.Y. Dec. 17, 2018); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *12-13 (S.D.N.Y. May 11, 2015); *Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *43; *see also Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026 , at *24 (S.D.N.Y. Oct. 28, 2011) (noting that "[i]n class settlement funds like this one, a one-third award of the settlement proceeds is considered typical and reasonable").

Class Counsel seek a $241,666.66 fee, or one-third of the settlement fund.  While this percentage could constitute a "windfall" in cases involving larger settlement funds, the requested fee of $241,666.66 "does not create such an issue."  *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15,175,000 settlement); *see also Sukhnandan*, 2014 U.S. Dist. LEXIS 105596, at *38 ($1,949,000 settlement).  This this factor weighs strongly in favor of approving the requested fee.

### 5.  Public policy considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices.  29 U.S.C. § 202(a); N.Y. Lab. Law § 650.  A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes.  *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks v. Morgan Stanley & Co., Inc.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *26 (S.D.N.Y. Oct. 24, 2005).  Moreover, given the relatively small recoveries of individual Class Members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations."  *Frank*, 228 F.R.D. at 181.  Indeed, "[w]here relatively small claims can only be prosecuted through aggregate litigation, and law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for

their efforts." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, at *25-26 (S.D.N.Y. Oct. 2, 2013). In light of the foregoing, Class Counsel's requested attorneys' fees are reasonable under the *Goldberger* factors and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to (1) grant final approval of the Settlement Agreement; (2) award Class Counsel attorneys' fees and costs; (3) approve the requested service awards; and (4) award the Claims Administrator its reasonable fees towards administering the settlement.

Dated: New York, New York
       February 13, 2025

By:    /s/ Denise A. Schulman
       D. Maimon Kirschenbaum
       Denise A. Schulman
       Michael DiGiulio
       JOSEPH & KIRSCHENBAUM LLP
       32 Broadway, Suite 601
       New York, NY 10004
       212-688-5640

       *Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains 7,798 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: New York, New York
February 13, 2025

By: /s/ Denise A. Schulman
Denise A. Schulman