UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
KE'MON CHAPMAN, on behalf of
herself and others similarly situated,

CASE NO. 23 CV 2778 (MMG)

**Plaintiff,**

v.

CITY WINERY NY – PIER 57, LLC,

**Defendant.**
---------------------------------------------------x

# DECLARATION OF DENISE A. SCHULMAN

I, Denise A. Schulman, under penalty of perjury, affirm as follows:

1. I am a partner with Joseph & Kirschenbaum LLP ("JK"), Plaintiffs' counsel in this action. I submit this declaration in support of Plaintiff's motion for preliminary approval of a class action settlement. I am familiar with the facts and circumstances set forth herein.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the parties' executed settlement agreement.

3. Attached hereto as **Exhibit 2** is a proposed final approval order.

4. Defendant City Winery NY – Pier 57 LLC ("Defendant") owns and operates the City Winery concert venue/restaurant located at Pier 57 in Manhattan ("City Winery Pier 57").

5. Plaintiff Ke'Mon Chapman worked at City Winery Pier 57 as a server.

6. On April 3, 2023, Plaintiff commenced this action on behalf of himself and a putative class of similarly situated service employees, alleging that Defendant did not properly compensate service employees for overtime hours worked, in violation of the FLSA and

1

New York law and improperly paid service employees pursuant to a tip credit, in violation of New York law.

7. On April 3, 2023, former City Winery Pier 57 server Sheyla Pallet joined this action as an Opt-In Plaintiff.

8. Plaintiff filed an amended complaint on July 14, 2023, which added claims for unpaid off the clock work, and a second amended complaint on August 1, 2023, which added a claim for failure to provide wage statements that complied with N.Y. Lab. L. § 195(3).

9. On September 15, 2023, Plaintiff moved to conditionally certify an FLSA collective and disseminate notice enabling interested servers, bartenders, and service assistants to join this action as Opt-In Plaintiffs. The Court granted that motion on November 2, 2023, and notice was duly sent to prospective Opt-In Plaintiffs.

10. 22 individuals filed consent to sue forms following the issuance of notice, two of whom subsequently withdrew from the case and two of whose FLSA claims were dismissed by the Court for failing to participate in discovery.

11. Plaintiff's minimum wage claim is based primarily on Defendant's use of the tip credit to pay servers, bartenders, and service assistants. Defendant paid service assistants the tip credit minimum wage through approximately the end of December 2022, after which it began paying service assistants at least the full minimum wage. Defendants paid servers and bartenders the tip credit minimum wage through approximately the end of April 2023, after which it began paying servers and bartenders at least the full minimum wage.

12. Plaintiff alleges that Defendant was not entitled to use the tip credit because it required service employees to spend at least two hours or 20% of their shifts performing non-tipped

work such as cleaning, setting tables, polishing silverware and glassware, rolling napkins, and other sidework.

13. Similarly, because Defendant was not entitled to use a tip credit, its payment of the tip credit overtime rate was an underpayment and violated the FLSA and New York law.

14. Plaintiff further contends that he and other service employees regularly worked uncompensated off the clock time as a result of Defendant's managers clocking service employees out before they finished working. This off the clock time included both regular and overtime hours, and thus resulted in both minimum wage and overtime violations.

15. Finally, Plaintiff alleges that Defendant violated N.Y. Lab. L. § 195(3) by failing to include all of service employees' hours worked on their wage statements.

16. The parties engaged in substantial discovery prior to reaching a settlement. Defendants deposed Plaintiff and Pallet prior to conditional certification and five additional Opt-In Plaintiffs following the close of the opt-in period.

17. Plaintiff took five depositions, including three City Winery Pier 57 managers and, as Fed. R. Civ. P. 30(b)(6) witnesses, Defendant's vice president of human resources and director of systems and licenses.

18. Plaintiff and all of the Opt-In Plaintiffs remaining in the case completed paper discovery, and Defendants produced Plaintiff's and the Opt-In Plaintiffs' personnel files, time records, and pay records, as well as relevant policy documents and documents concerning the timing and run times of concerts and similar events at City Winery Pier 57.

19. This extensive discovery enabled us to evaluate both the strength and value of the Class's claims.

20. On September 5, 2024 the parties attended a private mediation with mediator Ruth Raisfeld.

21. While the parties did not reach a settlement at the mediation, they continued to negotiate and ultimately agreed to settle this case for $725,000.

22. Plaintiff believes this settlement amount is highly favorable to the Class in light of their risks in this litigation.

23. The settlement amount exceeds the maximum amount of Class Members' out of pocket loss, which is the largest single claim in this case.

24. Specifically, Plaintiff estimates that the Class's maximum possible damages are approximately $2.263 million. Of this, the maximum amount of unpaid tip credit is $542,580, and the Class could recover an equal amount of liquidated damages. The maximum N.Y. Lab. L. § 195(3) damages are $1.108 million, and Plaintiff estimates that the unpaid wages for off the clock time total no more than $35,000, plus an equal amount as liquidated damages.

25. Absent a settlement, the Class faces substantial risks both in establishing liability and in obtaining their maximum possible recovery. For example, there are factual disputes concerning the amount of time Class Members spent performing non-tipped sidework and whether Class Members worked off the clock and, if so, for how much time.

26. The parties also dispute whether Plaintiff and the Class Members have Art. III standing to pursue their N.Y. Lab. L. § 195 claims.

27. While Plaintiff is not fully aware of Defendant's financial condition, the settlement amount is substantial, and as a condition of settlement Defendant would not agree to payment in

less than a year from when the parties reached a settlement, suggesting that the settlement amount is not immediately available to it.

28. There are 371 class members.

29. Named Plaintiff Chapman is an adequate representative of the proposed class, has fairly and adequately represented and protected the interests of all Class Members, and has no known conflicts with Class Members.

## SERVICE AWARDS

30. Named Plaintiff Ke'Mon Chapman initiated this action, remained in regular communication with Class Counsel throughout the litigation, and brought Opt-In Plaintiff Sheyla Pallet into the case at its inception.

31. Chapman and Pallet provided full paper discovery and were deposed prior to conditional collective certification. They also provided declarations in support of the motion for conditional collective certification and attended part of the mediation.

32. Chapman and all of the Opt-In Plaintiffs expended significant time providing documents and critical facts to counsel and participating in discovery. They all completed paper discovery and produced responsive documents if they had any.

33. In addition to Chapman and Pallet, Opt-In Plaintiffs Daniel Brooks, Shannon Gonzalez, Steven Hill, Kashir Sims, and Jason Vogel were all deposed.

34. This lawsuit is the first Google search result for Ke'Mon Chapman, which may harm him in future job searches. A true and correct copy of the Google results for "Ke'Mon Chapman" is attached as **Exhibit 3**.

5

## PLAINTIFF'S COUNSEL

35. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters.

36. D. Maimon Kirschenbaum manages the firm.

37. Since graduating from Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at JK. As a result of his accomplishments, he became member/partner of the firm in May of 2007.

38. I received my J.D. from New York University School of Law in 2008 and joined JK in January 2009. I was an associate until February 2017, when I became a partner.

39. Throughout my tenure at JK, I have almost exclusively represented employees with wage and hour and discrimination/retaliation claims, on both an individual and class basis.

40. Michael DiGiulio graduated from Vermont Law School in 2014 and joined JK in 2020. Prior to joining JK, Mr. DiGiulio clerked on the United States Court of Appeals for the Second Circuit and practiced as an associate attorney for Super Law Group.

41. Mr. DiGiulio has served with Mr. Kirschenbaum and me as co-lead counsel on cases that have been certified as collective and/or class actions.

42. Evelyn Velesaca joined JK as an administrative assistant in February 2022 and became a paralegal at the firm in January 2023. She received her B.A. from Hunter College in 2022. Before joining JK, Ms. Velesaca interned at Kramer Levin Naftalis & Frankel, the New York City Department of Social Services, and Volunteers of Legal Service.

43. Jorge Aguirre was an administrative assistant at JK from approximately February 2023 to November 2023. Before joining JK, Mr. Aguirre had over four years of experience working

6

for the Maricopa County Superior Court, including as a judicial clerk, courtroom bailiff, and judicial assistant.

44. Mariela Lini has been a paralegal at JK since January 2024. She received her B.A. from John Jay College of Criminal Justice in 2019. Before joining JK, she had nearly five years of experience as a legal assistant/paralegal.

45. Andy Pichardo has been an administrative assistant at JK since December 2023. He received his BA from The City College of New York in June 2023.

46. Mr. Kirschenbaum, Mr. DiGiulio, JK, and I have been approved numerous times as lead or co-lead class counsel (or counsel for representative plaintiffs in FLSA collective actions) in wage and hour actions in federal and state courts. *E.g.*, *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011); *Martinenko v. 212 Steakhouse Inc.*, No. 22 CV 518, 2023 U.S. Dist. LEXIS 73982 (S.D.N.Y. Apr. 27, 2023); *Lomeli v. Falkirk Mgmt. Corp.*, Index No. 1580-2016 (N.Y. Sup. Ct. Orange County Oct. 22, 2021); *Argudo v. Parea Grp. LLC,* No. 18 CV 0678, U.S. Dist. LEXIS 163249 at *17 (S.D.N.Y. Sept. 24, 2019); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015); *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 13, 2014); *Schear v. Food Scope Am, Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014); *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012); *Ramirez v. Lovin' Oven Catering Suffolk, Inc*., 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011); *Spicer v. Pier Sixty LLC*, 2010 U.S. Dist. LEXIS 76782 (S.D.N.Y. July 26, 2010); *Kato v. Masa NY*, Index No. 09-104578 (S. Ct., N.Y. County Jan. 28, 2010); *Delaney v. Geisha NYC, LLC*, 261

F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective action); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007).

47. Several of these cases have changed the landscape of wage and hour class and collective litigation in general, and such litigation in the food service industry specifically. *See*, *e.g.*, *Shahriar*, 659 F.3d 234 (affirming class certification and holding that in FLSA actions pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state law claims pursued on a class basis under Fed. R. Civ. P. 23); *Spicer*, 249 F.R.D. 321 (holding that the New York Court of Appeals' decision in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), finding that mandatory charges can be gratuities applies retroactively and issuing first denial of a defendant's summary judgment motion on *World Yacht* claim).

48. As a result of these lawsuits, we have recovered over $100 million for thousands of workers. *E.g.*, *Gordon v. Bluetriton Brands, Inc.*, No. 616877/2022 (N.Y. Sup. Ct. Nassau County Oct. 24, 2023) (granting final approval of $8.4 million settlement); *Capsolas*, 2012 U.S. Dist. LEXIS 144651 (granting final approval of $5,250,000 settlement); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (granting final approval of $8.5 million settlement); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (granting final approval of $4,750,000 settlement); *Alderman v. 21 Club Inc.*, No. 09 Civ. 2418 (S.D.N.Y. Jan. 27, 2012) (granting final approval of $2,000,000 settlement); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011)

(granting final approval of $1,975,000 settlement); *Braunstein v. Hudson Hall LLC*, No. 19 Civ. 7983 (S.D.N.Y. May 14, 2021) (approving $950,000 settlement); *Ahad v. BLT Steak LLC*, No. 08 Civ. 5528 (S.D.N.Y. Aug. 13, 2010) (approving $925,000 settlement); *Brinker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug. 13, 2009) (granting final approval of $900,000 settlement); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of $2,500,000 settlement).

49. JK's contemporaneous time records for this case are attached hereto as **Exhibit 4.** Below is a chart summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time for time spent by JK on this matter. These rates have been approved by courts in this District. *E.g.*, *Martinenko v. 212 Steakhouse, Inc.*, 22 CV 518, 2024 U.S. Dist. LEXIS 231925, at *9-10 (S.D.N.Y. Dec. 23, 2024).

| **Individual** | **Rate** | **Total Hours** | **Total** |
|---|---|---|---|
| D. Maimon Kirschenbaum | $500 | 12.2 | $6,100 |
| Denise A. Schulman | $500 | 163.5 | $81,750 |
| Michael DiGiulio | $350 | 237.9 | $83,265 |
| Paralegals/administrative assistants | $125 | 55.3 | $6,912.50 |
| | | **Total:** | **$178,027.50** |

50. We will expend more hours after the date of this motion in appearing at the Fairness Hearing and monitoring the administration of the Settlement.

51. Class Counsel took this case pursuant to a retainer agreement with Plaintiff that stated Counsel would receive up to one-third of the recovery *only if* Plaintiff obtained a recovery.

9

52. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case.

53. Class Counsel undertook to prosecute this action without an assurance of payment for their services, litigating this case on a wholly contingent basis in the face of substantial risk. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. Class Counsel stood to gain nothing in the event the case was unsuccessful.

54. JK undertook the responsibility to fund the costs of this case and to litigate through trial if necessary, and possibly appeals if relevant. Our activities included, but were not limited to: interviewing and remaining in regular contact with Plaintiff and the Opt-In Plaintiffs; conducting paper discovery and depositions; raising discovery disputes with the Court; briefing a motion for class certification and opposing a motion to dismiss; reviewing hundreds of documents produced by Defendants; preparing damage calculations; negotiating the settlement; drafting the settlement agreement; drafting motions for preliminary and final approval of the settlement; monitoring the administration of the settlement; and communicating with Class Members. After the fairness hearing, we will

continue to oversee the administration of the settlement and respond to Class Member inquiries.

55. To date, Class Counsel have worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

56. No Class Member has raised objections to the attorneys' fees as set forth in the Notice of Settlement.

57. Class Counsel incurred the following costs in litigating this case:

| Description of cost | Total costs |
|---|---|
| Filing fee | $402 |
| Postage and delivery services | $136.69 |
| Depositions | $12,520.70 |
| Mediation | $5,000 |
| **Total:** | **$18,059.39** |

## ADDITIONAL EXHIBITS

58. Attached hereto a **Exhibit 5** is a true and correct copy of the transcript in *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008 (RJS) (S.D.N.Y. Dec. 22, 2015)

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York  /s/ Denise A. Schulman
February 13, 2025  Denise A. Schulman