**Exhibit 1**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Ke'Mon Chapman ("Chapman" or "Plaintiff") on behalf of himself and a class of allegedly similarly situated individuals he seeks to represent and City Winery NY – Pier 57 LLC ("Defendant," and together with Plaintiff, the "Parties").

## 1.    RECITALS AND BACKGROUND

WHEREAS, on April 3, 2023, Chapman filed a putative class and collective action (the "Litigation") against Defendant in the United States District Court for the Southern District of New York asserting various claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for Defendant's alleged failure to pay minimum wage and overtime to Chapman and all other employees who are allegedly similarly-situated;

WHEREAS, Sheyla Pallet filed a consent to sue form on April 3, 2023 joining the Litigation;

WHEREAS, Plaintiff filed amended complaints on July 14, 2023 and August 1, 2023, the latter of which added a claim for failure to provide wage statements as required by the NYLL;

WHEREAS, 22 individuals filed consent to sue forms following the issuance of Court-approved notice, 18 of whom – Jamy Aguilera, Daniel Brooks, Thatcher Ford, Shannon Gonzalez, Matthew Hendrix, Steven Hill, Fathay Kiawu, Terrance Mackie, Christopher Manfugas, Brian Marrero, Jonathan Politz, Nicole Rivera, Jonathan Romero, Whitney Simmons, Kashir Sims, Henry Sistrunk, Duval Valverde, and Jason Vogel (together with Sheyla Pallett, the "Opt-In Plaintiffs") – now remain in the Action as Opt-In Plaintiffs;

WHEREAS, on September 5, 2024, the Parties attended a mediation with mediator Ruth Raisfeld but did not reach a settlement at that time;

WHEREAS, the parties continued to negotiate after the mediation and ultimately reached a settlement in principle;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as defined below) between Plaintiff, Opt-In Plaintiffs, Class Members, Defendant, and Releasees (as defined below);

WHEREAS, Defendant denies all of the allegations made by Plaintiff and Opt-In Plaintiffs relating to wage and hour violations, and denies any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wages and/or other amounts were improperly withheld from any employees, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiffs' Counsel (as defined below) has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiff, Opt-In Plaintiffs, and putative class members, and based upon Plaintiffs' Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that, if not settled now, litigation might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interest of the Plaintiff, Opt-In Plaintiffs and the putative members of the class;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.2 **Alternative Minimum Benefit.** "Alternative Minimum Benefit" means the minimum settlement amount of One Hundred Dollars and Zero Cents ($100.00) for Class Members whose settlement allocation pursuant to 3.4(B) below falls below One Hundred Dollars and Zero Cents ($100.00).

1.3 **Bar Date.** The "Bar Date" will be the date that is sixty (60) days from the mailing of Notice to the Class Members.

1.4 **City Winery Pier 57** "City Winery Pier 57" means the City Winery venue/restaurant located at Pier 57 in Manhattan, New York and does not include City Winery-branded venues/restaurants at other locations.

1.5 **Claims Administrator or Settlement Claims Administrator.** The "Claims Administrator" or "Settlement Claims Administrator" will be selected by the Parties, subject to approval by the Court, to mail the Notices and administer the calculation, allocation, and distribution of the QSF. The Settlement Claims Administrator's fees shall be borne by the QSF. The Parties have preliminarily identified Xpand Legal Consulting as the Settlement Claims Administrator.

1.6 **Class Action Complaint.** "Class Action Complaint" shall refer to the Second Amended Complaint (Dkt. No. 34).

1.7 **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" shall mean D. Maimon Kirschenbaum, Denise Schulman, and Michael DiGiulio of Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601 New York, New York 10004.

**1.8**     **Class Members.** "Class Members" shall be defined as Plaintiff, Opt-In Plaintiffs and all members of the FLSA Class and NYLL Class.

**1.9**     **Class List.** A list of all Class Members, identified by: (i) name; (ii) last known address; (iii) last known phone number; (iv) Social Security Number; (v) dates of employment at City Winery Pier 57; (vi) hours worked at City Winery Pier 57 as a server or bartender (not including as an event server or event bartender) between April 3, 2017 and April 30, 2023; and (vii) hours worked at City Winery Pier 57 as a service assistant between April 3, 2017 and December 31, 2022. The Class List is to be used by Class Counsel and the Settlement Claims Administrator to effectuate settlement and may not be used for any other purpose. The version of the Class List provided to Class Counsel need not include Social Security Numbers. The Class List shall be created and served in Microsoft Excel format or other alternative, usable electronic format.

**1.10**     **Court.** "Court" means the United States District Court for the Southern District of New York.

**1.11**     **Covered Positions.** "Covered Positions" means servers, bartenders, and service assistants at City Winery Pier 57, not including event servers and event bartenders.

**1.12**     **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater. To the extent any actions are required to be taken by a certain Day and such Day falls on a Saturday or Sunday, such action must be taken by the following Monday. To the extent any actions are required to be taken by a certain Day and such Day falls on a legal holiday, such action must be taken by the next non-holiday weekday.

**1.13**     **Defendant.** "Defendant" shall mean City Winery NY – Pier 57 LLC.

**1.14**     **Defendant's Counsel.** "Defendant's Counsel" shall mean Paul Rutigliano and Adil Yaqoob of Akerman LLP, 1251 Avenue of the Americas, 37th Floor, New York, New York 10020.

**1.15**     **Effective Date.** "Effective Date" of the Final Settlement Agreement will be either: (a) the date 35 days after entry of a Final Order and Judgment, if there are no appeals; or (b) the Court's entry of a Final Order and Judgment after resolving any appeals, whichever occurs later.

**1.16**     **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.17**     **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, dismissing the Litigation with prejudice, and entering a judgment consistent with the Parties' settlement terms.

1.18 **FLSA Class.** "FLSA Class" shall be defined as employees who worked in Covered Positions at City Winery Pier 57 between April 3, 2020 and September 20, 2024 who endorse their settlement checks and/or are Opt-In Plaintiffs.

1.19 **Litigation.** The "Litigation" shall be defined as the wage and hour lawsuit that Plaintiff has filed in the United States District Court for the Southern District of New York bearing the civil action number 23 CV 2778.

1.20 **Maximum Settlement Amount.** "Maximum Settlement Amount" or "Settlement Amount" means Seven Hundred Twenty Five Thousand Dollars and Zero Cents ($725,000.00), which is the maximum amount Defendant will pay to settle the Litigation as set forth in this Agreement, exclusive of payments made to cover the employer's share of payroll taxes.

1.21 **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Maximum Settlement Amount after deductions for: (1) Court-approved Settlement Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Awards to Plaintiff and Opt-In Plaintiffs.

1.22 **Notice or Notices.** "Notice" or "Class Notice" means the Court approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing, including notice of an opportunity to opt-out and/or object to the proposed Settlement.

1.23 **NYLL Class.** "NYLL Class" shall be defined as all employees who worked in Covered Positions at City Winery Pier 57 between April 3, 2017 and September 20, 2024 and who do not opt-out of the Class as explained in Paragraph 2.6.

1.24 **Objector.** "Objector" means an individual who files an objection to this Agreement and does not include any individual who opts-out of this Agreement.

1.25 **Opt-In Plaintiffs.** "Opt-In Plaintiffs" shall be defined as Jamy Aguilera, Daniel Brooks, Thatcher Ford, Shannon Gonzalez, Matthew Hendrix, Steven Hill, Fathay Kiawu, Terrance Mackie, Christopher Manfugas, Brian Marrero, Sheyla Pallet, Jonathan Politz, Nicole Rivera, Jonathan Romero, Whitney Simmons, Kashir Sims, Henry Sistrunk, Duval Valverde, and Jason Vogel.

1.26 **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.27 **Plaintiff.** "Plaintiff" shall be defined as Ke'Mon Chapman.

1.28 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement and directing the manner and timing of providing Notices to the Class Members.

1.29 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount

paid by Defendant. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Net Settlement Fund and any such interest shall be applied towards the payment of any of the employer's share of payroll taxes.

1.30 **Releasees**. "Releasees" shall mean Defendant and its present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or any of their present and former officers, partners, members, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

1.31 **Service Award Plaintiffs.** "Service Award Plaintiffs" means Ke'Mon Chapman, Jamy Aguilera, Daniel Brooks, Thatcher Ford, Shannon Gonzalez, Matthew Hendrix, Steven Hill, Fathay Kiawu, Terrance Mackie, Christopher Manfugas, Brian Marrero, Sheyla Pallet, Jonathan Politz, Nicole Rivera, Jonathan Romero, Whitney Simmons, Kashir Sims, Henry Sistrunk, Duval Valverde, and Jason Vogel.

1.32 **Settlement Checks.** "Settlement Checks" means the set of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

1.33 **Unredeemed Funds.** "Unredeemed Funds" means any money still remaining in the Net Settlement Fund on the later of one hundred eighty-one (181) days after the Settlement Checks are issued or fifty (50) days after the last reissued Settlement Check is issued.

2. **INITIAL PROCEDURAL MATTERS**

2.1 **Binding Agreement.** Subject to Court-approval, this Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2 **Preliminary Approval Motion.**

(A) Within twenty-one (21) days after the Parties' execution of this Agreement, Class Counsel will file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") with the Court. The Preliminary Approval Motion will seek: (i) the setting of date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which date will be sixty (60) days from the mailing of Notice to the Class Members; (ii) the appointment of the Claims Administrator to administer the settlement; (iii) the appointment of Plaintiffs' Counsel as counsel for the class/collective; and (iv) for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date. Class Counsel will send the proposed Preliminary Approval Order to Defendant's Counsel for their review

and comment at least seven (7) days before Class Counsel files the Motion for Preliminary Settlement Approval. Class Counsel will consider, in good faith, any comments and proposed revisions suggested by Defendant's Counsel before filing the final version of the Preliminary Approval Order. Defendant will not oppose the Preliminary Approval Motion provided it is consistent with the terms of this Settlement Agreement.

(B)     If the Court denies the Preliminary Approval Motion, unless the parties jointly agree to seek reconsideration of the ruling, to appeal the ruling, or to seek Court approval of a renegotiated settlement, the Litigation will continue as if no settlement had been attempted, and this Agreement shall be null and void. Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action and to contest the merits of the claims being asserted in the Litigation, including without limitation, contesting whether the Litigation is appropriate to proceed as a class and/or collective action.

(C)     The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.3     Retention and Responsibilities of the Settlement Claims Administrator.**

(A)     Within five (5) days after the filing of a Preliminary Approval Motion, the Parties shall engage a Settlement Claims Administrator whose fee shall be paid from the Qualified Settlement Fund.

(B)     The Settlement Claims Administrator will be responsible for:

(1)     preparing, printing and disseminating the Court-approved Notice to Class Members;

(2)     copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Class Member;

(3)     receiving, reviewing, and responding to any Opt-Out Statements or any other inquiries submitted by Class Members;

(4)     furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members which the Claims Administrator receives within three (3) days of receipt;

(5)     keeping track of requests for exclusion, including maintaining the original mailing envelope in which the request was mailed;

(6)     keeping track of returned Notices;

(7)    within five days of receipt, ascertaining current address and addressee information for each Notice returned as undeliverable and re-mailing of Notices to the current address

(8)    calculating distribution amounts to Class Members in accordance with this Agreement;

(9)    preparing and mailing the Settlement Checks and any related tax reporting forms to Plaintiff, Opt-In Plaintiffs, Class Members, Class Counsel, and any other party, entity, or individual for whom receipt of such documents is necessary or required;

(10)    calculating any employer-side payroll taxes required pursuant to the settlement and providing such information to Defendant's Counsel so that all payments required by Defendant pursuant to the terms of this Agreement can be made in a timely manner;

(11)    timely responding to inquiries from Class Members, Class Counsel, or Defendant's Counsel consistent with the Administrator's duties specified herein;

(12)    referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein;

(13)    promptly apprising Class Counsel and Defendant's Counsel of the activities of the Administrator and maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

(14)    promptly providing copies to Class Counsel and Defendant's Counsel of any opt out forms and objections submitted by Class Members;

(15)    preparing, monitoring and maintaining a telephone number with phone answerers until the Final Effective Date or the termination of this Agreement whichever comes first;

(16)    distributing any Court-approved Service Awards;

(17)    preparing and mailing Counsel's attorneys' fees, expenses, and costs and settlement payments in accordance with this Settlement Agreement and Order of the Court;

(18)    providing copies of the Settlement Checks and the endorsement of same to Class Counsel and Defendant's Counsel upon request;

(19)     providing a final report, deliverable to Class Counsel and Defendant's Counsel, detailing the results of the class mailings and participation;

(20)     mailing all required tax forms to Class Members and to Class Counsel as provided herein;

(21)     filing all necessary tax forms required under applicable tax laws and regulations as a result of the terms of this Agreement with the appropriate governmental agencies;

(22)     providing Class Counsel with any necessary documents regarding the claims administration process that Class Counsel may need in order to final a Motion for Final Approval of the Settlement;

(23)     distributing notices pursuant to, and otherwise timely complying with the requirements of, the Class Action Fairness Act ("CAFA"); and

(24)     such other tasks upon which the Parties mutually agree.

(C)     The Parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the Parties, but no less frequently than every week, regarding the status of the mailing of the Notices to Class Members, the identity and number of Class Members who object and/or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks.

(D)     In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendant's Counsel (a) a list of all Class Members who filed a timely objection and (b) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period. Throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

(E)     The Parties agree to reasonably cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members and updating information concerning Class Members.

**2.4     Class Notice.** The Class Notice will inform Class Members about this settlement and will also advise them of the opportunity to object to or opt-out, and/or to appear at the Fairness Hearing. A copy of the Class Notice Agreed to by the Parties is attached hereto as "Exhibit A".

**2.5    Process for Notice to Class Members**

(A)    Within fourteen (14) days after the Court issues the Preliminary Approval Order, Defendant's Counsel will provide the Settlement Claims Administrator and Class Counsel the Class List.

(B)    Within fourteen (14) days of receipt of the Class List, the Settlement Claims Administrator will mail to all Class Members, via First Class United States Mail, postage prepaid, the Court-approved Class Notice.

(C)    The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable, including one skip trace, and shall attempt one re-mailing. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement. The Settlement Claims Administrator shall also mail a Class Notice to any Class Member who requests a re-mail.

**2.6    Class Member Opt-Outs.**

(A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone number, and a statement indicating his or her intention to opt-out such as: "I opt out of the City Winery Pier 57 wage and hour settlement." ("Opt-Out Statement"). To be effective, an Opt-Out Statement must be mailed by the Bar Date. In the event that the Settlement Claims Administrator receives an Opt-Out Statement after the Bar Date that does not contain a post-mark, the mailing date shall be presumed to be two days before the Settlement Claims Administrator received the Opt-Out Statement, unless a Class Member provides proof that establishes a different mailing date.

(B)    The end of the time period to opt-out of the settlement ("Opt-Out Period") shall be the Bar Date. The Bar Date will be the date that is sixty (60) days from the mailing of Notice to the Class Members.

(C)    The Settlement Claims Administrator will stamp the received date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof. The Settlement Claims Administrator will, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-out Statements to Class Counsel and Defendant's Counsel by email, and will provide an update to any such list within one (1) day should the Settlement Claims Administrator receive an Opt-Out Statement after the Opt-Out Period. The Settlement Claims Administrator will

retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files.

(D)     Any Class Member who does not submit an Opt-Out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case, and have any Released Class Claims released and dismissed with prejudice.

**2.7     Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be mailed by the Bar Date. The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, job title, address, and telephone number for the Class Member making the objection. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel by email no later than three (3) days after receipt thereof. Class Counsel will file the date-stamped objections with their Motion for Final Approval. In the event that the Settlement Claims Administrator receives an objection after the Bar Date that does not contain a post-mark, the mailing date shall be presumed to be the day before the Settlement Claims Administrator received the objection, unless a Class Member provides proof that establishes a different mailing date.

(B)     An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8     Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)     No later than seven (7) calendar days before the Fairness Hearing, Plaintiff will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

(B)     At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) certify the NYLL Class and FLSA Class for purposes of settlement; (2) approve the settlement and

Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks to Class Members; (4) order any Court-approved Service Awards, to be paid from the QSF, to individuals as described in this Agreement; (5) order Court-approved attorneys' fees and costs to be paid to Class Counsel from the QSF; (6) order Court-approved Claims Administrator's fees to be paid to the Claims Administrator from the QSF (7) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not opt-out; (8) order entry of Final Judgment in accordance with this Agreement; and (9) retain jurisdiction as necessary for the purpose of enforcing the administration of the settlement.

(C)     If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)     If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.  In that event, any class and/or collective certified for purposes of settlement shall be automatically decertified, and Defendant may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims asserted by Plaintiff and Opt-In Plaintiffs in this action.

(E)     If the Court fails to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Authorized Claimants under the Agreement.  The content of such notice shall be agreed to by the parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.

## 3.     SETTLEMENT TERMS

### 3.1     Settlement Amount.

(A)     Defendant will pay the Maximum Settlement Amount of Seven Hundred Twenty Five Thousand Dollars and Zero Cents ($725,000.00), which shall fully resolve and satisfy any claim for attorneys' fees, expenses and costs approved by the Court, any and all amounts to be paid to all Class Members for releasing class claims as set forth herein, all applicable Service Awards, and Settlement Claims Administrator costs and fees.  Other than any applicable employer-side payroll taxes typically borne by the employer, Defendant shall not be required to pay more than the Maximum Settlement Amount.

(B)     Defendant shall fund the Qualified Settlement Fund by paying Seven Hundred Twenty Five Thousand Dollars and Zero Cents ($725,000.00), plus any funds necessary to fund the employer's share of payroll taxes resulting, to the Settlement Claims Administrator by the later of thirty (30) days after entry of the Final Approval Order or September 1, 2025. Nothing herein shall prevent Defendant from funding the Qualified Settlement Fund, in whole or in part, prior to the date set forth herein.

**3.2     Settlement Amounts Payable as Attorneys' Fees, Expenses and Costs.**

(A)     Prior to the Fairness Hearing, Class Counsel shall petition the Court for reimbursement of their reasonable litigation costs and expenses from the Qualified Settlement Fund.  In addition, Class Counsel shall petition the Court for no more than one-third of the Maximum Settlement Amount from the Qualified Settlement Fund as an award of attorneys' fees.  Defendant will not oppose such applications provided the applications are consistent with the terms of this Agreement.  Defendant shall have no additional liability for attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any reduction by the Court of Class Counsel's application for attorneys' fees and costs shall become part of the Net Settlement Fund and shall be subject to allocation as provided in Paragraph 3.4.

**3.3     Service Awards to Named Plaintiffs.**

(A)     In return for services rendered to the Class Members, Plaintiff and the Service Award Plaintiffs will seek service awards in the total amount of $26,500, to be allocated as follows: $7,500 to Ke'Mon Chapman, $7,500 to Sheyla Pallet, $1,000 to Daniel Brooks, $1,000 to Shannon Gonzalez, $1,000 to Steven Hill, $1,000 to Kashir Sims, $1,000 to Jason Vogel, $500 to Jamy Aguilera, $500 to Thatcher Ford, $500 to Matthew Hendrix, $500 to Fathay Kiawu, $500 to Terrance Mackie, $500 to Christopher Manfugas, $500 to Brian Marrero, $500 to Jonathan Politz, $500 to Nicole Rivera, $500 to Jonathan Romero, $500 to Whitney Simmons, $500 to Henry Sistrunk, and $500 to Duval Valverde.  Defendants will not oppose Plaintiff's and Service Award Plaintiffs' applications for Service Awards as long as the Service Awards collectively total no more than $26,500 and are otherwise consistent with the terms of this Agreement.

(B)     The outcome of the Court's ruling on the application for the Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.  Should all or part of any

Service Award sought not be approved by the Court, the sum shall revert to the Net Settlement Fund.

**3.4** **Net Settlement Fund and Distribution to Class Members.**

(A) The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B) Each Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following terms:

    (1) The Net Settlement Fund shall be distributed among Class Members who worked at City Winery Pier 57 in Covered Positions between April 3, 2017 and September 20, 2024.

    (2) Notwithstanding the formulas agreed upon by the Parties, no Class members will be awarded a payment that is less than the Alternative Minimum Benefit, which equals One Hundred Dollars ($100.00). In the event that any Class Member's award must be increased to the Alternative Minimum Benefit the difference shall be borne proportionately by the Class Members receiving more than the Alternative Minimum Benefit.

    (3) The Net Settlement Fund shall be allocated as follows:

        (a) Each Class Member will receive one (1) point for every hour worked at City Winery Pier 57 as a server or bartender between April 3, 2017 and April 30, 2023.

        (b) Each Class Member will receive one (1) point for every hour worked at City Winery Pier 57 as a service assistant between April 3, 2017 and December 31, 2022.

        (c) The Net Settlement Fund will be divided by the aggregate number of points accrued by all Class Members to derive the Point Value.

        (d) Each Class Member's total points will be multiplied by the Point Value to determine his or her share of the Net Settlement Fund.

(C) Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations.

(D) By the later of five (5) days after the Effective Date or fifteen (15) days after Defendant fully funds the Qualified Settlement Fund, the Claims Administrator shall mail to all Class Members their share of the Net Settlement Fund. The Claims Administrator shall use reasonable efforts to make an additional mailing to Class

Members whose checks are returned because of incorrect addresses. Such efforts shall include using Social Security Numbers to obtain updated address information. Class Members will receive Settlement Checks without filing claim forms.

(E)     Class Members will have ninety (90) calendar days from when the Settlement Checks are issued to redeem their settlement payments. If a Class Member does not redeem their Settlement Checks within the 90 day period, their Settlement Checks will be void and a stop-payment will be placed. If a Class Member contacts Class Counsel or the Claims Administrator up to one hundred eighty (180) calendar days from when the Settlement Checks are issued to request a reissued check, the Claims Administrator will, upon confirming that the Settlement Check in question has not been redeemed, issue a stop payment on the Class Member's original settlement check and reissue that Class Member's Settlement Check. All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter.

(F)     Any money still remaining in the Net Settlement Fund on the later of one hundred eighty-one (181) days after the Settlement Checks are issued or fifty (50) days after the last reissued settlement check is issued shall revert back to Defendants.

## 3.5     Tax Characterization of Payments to Class Members.

(A)     All payments made to Class Members from the Net Settlement Fund shall be allocated as follows: twenty five percent (25%) of such payments shall be allocated to the payment of wages (for which a Form W-2 will be issued) subject to taxes and withholdings, and seventy five percent (75%) shall be non-wage income and not be subject to payroll taxes and withholdings (for which a Form 1099-MISC will be issued).

(B)     All payments of Service Awards and Class Counsel attorneys' fees and costs, shall be non-wage income (for which a Form 1099-MISC will be issued) and not be subject to payroll taxes and withholdings.

(C)     Defendant will provide the Settlement Claims Administrator such information in Defendant's possession as is necessary for the Settlement Claims Administrator to make proper tax withholdings, issue and file tax-related forms, and comply with all tax reporting obligations.

## 4. RELEASE OF CLASS CLAIMS

**4.1** **Release of Class Claims.** Upon the Effective Date, and except as to such claims as may be created by this Agreement, Plaintiff, Opt-In Plaintiffs, and all NYLL Class Members who have not opted out of this Settlement, on their behalf and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully release Defendant and Releasees from any and all wage and hour claims against Defendant and Releasees that have been brought or could have been brought under, but not limited to, the New York Labor Law, the New York Hospitality Industry Wage Order, the New York Wage Order for Miscellaneous Industries, the New York Minimum Wage Act, and the New York Wage theft Prevention Act, and or the regulations under such statutes, laws, and wage order, for work performed at or on behalf of the City Winery venue/restaurant located at Pier 57 in New York, New York, whether known or unknown, including any such claims for unpaid wages, overtime, tips, gratuities, service charges, administrative or other mandatory charges, failure to maintain and furnish employees with proper Rate of Pay notices and/or wage statements, claims to recover the tip credit, spread-of-hours payments, call-in payments, meal credit claims, uniform maintenance fees, meal break claims, liquidated damages, statutory penalties, and attorneys' fees and costs related to such claims, through the date that the Court issues an Order granting final approval of this Agreement.

**4.2** **Release of Claims for FLSA Class Members Who Cash Their Settlement Check.** Plaintiff, Opt-In Plaintiffs, and all FLSA Class Members who endorse their Settlement Checks shall forever and fully release Defendant and Releasees from any and all wage and hour claims against Defendant and Releasees that have been brought or could have been brought, including, but not limited to, under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the regulations thereunder for work performed at or on behalf of the City Winery venue/restaurant located at Pier 57 in New York, New York, including any such claims for unpaid wages, liquidated damages, improper taking of a tip credit, and attorneys' fees and costs related to such claims, through the date that the Court issues an Order granting final approval of this Agreement.

**4.3** **Settlement Checks.** All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

> **"RELEASE OF CLAIMS:**
>
> By endorsing this check, I consent to join the case entitled *Chapman v. City Winery – Pier 57 LLC, et al.* and I hereby release Defendant and Releasees from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law and/or any other applicable wage and hour laws, rules or regulations brought or which could have been brought in the litigation, including, but not limited to, minimum wage and overtime claims, as reflected in the Section 4 of the Settlement Agreement and Release."

Any modification or amendment of the above-language by the Class Member, at Defendant's discretion, may not be accepted, and may void the Settlement Check. The

Administrator shall provide Defendant signed copies of each Settlement Check after they have been cashed.

## 5.  DENIAL OF LIABILITY.

Defendant has agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (1) avoid the further expense and disruption of Defendant's business due to the pendency and expense of litigation, and (2) put the potential litigation, and all disputes between the Parties, to rest. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendant or the Releasees, nor as an admission that a class or collective should be certified for any purpose other than settlement purposes.

## 6.  INTERPRETATION AND ENFORCEMENT.

**6.1  Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**6.2  No Assignment.** Class Counsel and Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**6.3  Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**6.4  Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**6.5  Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**6.6  Captions.** The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**6.7  Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law

16

principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.8 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

6.9 **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.10 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.11 **When Agreement Becomes Effective; Counterparts.** Subject to Court-approval, this Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.12 **Signatures.** This Agreement is valid and binding if signed by Plaintiff and Defendant's authorized representatives.

6.13 **Facsimile, Electronic, and Email Signatures.** Any signature made or electronically made and/or transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

6.14 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

_____ Date: October, 30, 2024

City Winery – Pier 57 LLC

By: Nicole Sanchez

Its: VP of Human Resources

Docusign Envelope ID: A50C1280-DCFD-48AA-8CF1-220F13D7663D



Ke Mon Chapman

Date: 10/28/2024 _____, 2024

# Exhibit A

# NOTICE OF PROPOSED CLASS ACTION LAWSUIT SETTLEMENT AND FAIRNESS HEARING

**TO: PERSONS EMPLOYED AS A SERVER, BARTENDER, OR SERVICE ASSISTANT AT THE CITY WINERY VENUE/RESTAURANT LOCATED AT PIER 57 IN MANHATTAN BETWEEN APRIL 3, 2017 AND SEPTEMBER 20, 2024**

Based on information in the records of City Winery – Pier 57 LLC ("Defendant"), you were employed as a server, bartender, or service assistant at the City Winery venue/restaurant located at Pier 57 ("City Winery Pier 57") in Manhattan. If that is true, you may be eligible to participate in the proposed settlement of the case captioned *Chapman v. City Winery – Pier 57 LLC, et al.,* Case No. 23 CV 2778, currently pending in United States District Court for the Southern District of New York (the "Lawsuit").

## 1. WHAT IS THE PURPOSE OF THIS NOTICE?

**PLEASE READ THIS NOTICE CAREFULLY.** It contains important information about your rights concerning the settlement of the Lawsuit. If the Court approves the Settlement, each Class Member will be bound by the terms of the Settlement unless he/she affirmatively opts-out of the Settlement.

The Court has ordered that this Notice be sent to you to inform you of your rights under the Settlement Agreement resolving the Lawsuit.

## 2. WHAT IS THIS CASE ABOUT?

The Lawsuit asserts claims under the Federal Labor Standards Act ("FLSA") and New York law alleging that the Defendant paid servers, bartenders, and service assistants less than the full minimum wage and overtime rates for all hours worked and failed to provide them with the wage statements required under New York law.

Defendant denies these allegations in their entirety and maintains that it paid all employees properly for all hours worked and provided appropriate wage statements. The Parties have entered into this Settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. The Court has not made any ruling on the merits of the claims in the Lawsuit, and no party has prevailed in this action.

## 3. WHO IS INCLUDED IN THE CLASS?

The Parties have agreed to settle the Lawsuit for a class consisting of all persons employed by Defendant as servers, bartenders, and service assistants at City Winery Pier 57 between April 3, 2017 to September 20, 2024. You have received this notice because Defendant has identified you as a possible Class Member based on its records.

## 4. WHO ARE THE LAWYERS FOR THE CLASS, AND HOW WILL THEY BE PAID?

The Court has appointed D. Maimon Kirschenbaum, Denise A. Schulman, and Michael DiGiulio of Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601, New York, NY 10004, 212-688-5640, mike@jk-llp.com to represent you and the other Class Members. These lawyers are called Class Counsel. You will not be charged separately for these lawyers. Their fees are being paid from the total settlement fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

Class Counsel will ask the Court to approve payment of their litigation expenses and attorneys' fees of up to one third of the Settlement Fund. The requested amount would pay Class Counsel for all work that they have performed in this action, including filing the complaint, investigating the facts, and negotiating and overseeing

the settlement.

## 5. HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?

If the Court grants final approval of the Settlement, Defendant will pay a maximum of $725,000.00 in total settlement funds. If the Court also approves the payments set forth below, the following payments and expenses will be deducted from the $725,000.00 gross settlement amount prior to distribution of the settlement payments to Class Members:

- Attorneys' Fees and Costs: Class Counsel will apply to the Court for recovery of costs and attorneys' fees up to a maximum of a third of the Settlement Fund.

- Service Awards: If the Court approves such payments, the Named Plaintiff and Opt-In Plaintiffs may receive the following awards for services provided in this case: $7,500 to each of Ke'Mon Chapman and Sheyla Pallet; $1,000 to each of Daniel Brooks, Shannon Gonzalez, Steven Hill, Kashir Sims, and Jason Vogel; and $500 to each of Jamy Aguilera, Thatcher Ford, Matthew Hendrix, Fathay Kiawu, Terrance Mackie, Christopher Manfugas, Brian Marrero, Jonathan Politz, Nicole Rivera, Jonathan Romero, Whitney Simmons, Henry Sistrunk, and Duval Valverde.

- Settlement administration costs: The Claims Administrator's fees shall be paid out of the Settlement Fund.

The "Net Settlement Fund" is the portion of the Settlement Fund that will be allocated among all Class Members. The Net Settlement Fund is the maximum settlement amount minus Court-approved service awards, litigation costs, settlement administration costs, and attorneys' fee. The Net Settlement Fund will be allocated among all Class Members as follows:

- Each Class Member will receive one (1) point for every hour worked at City Winery Pier 57 as a server or bartender between April 3, 2017 and April 30, 2023.

- Each Class Member will receive one (1) point for every hour worked at City Winery Pier 57 as a service assistant between April 3, 2017 and December 31, 2022.

- The Net Settlement Fund will be divided by the total number of points accrued by all Class members to calculate the Point Value.

- Each Class Member's total points will be multiplied by the Point Value to determine his or her share of the Net Settlement Fund.

- No Class Member will be allocated a settlement share that is less than $100. All Class Members who did not work at City Winery Pier 57 as servers or bartenders before May 1, 2023 or as service assistants before January 1, 2023 will receive a settlement share of $100.

- Based on Defendant's records, your individual settlement share is estimated to be $____. However, the exact amount you will receive is impossible to determine at this time due to a number of factors.

- Neither Class Counsel nor Defendant nor Defendant's Counsel makes any representations concerning tax consequences of the Settlement or participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

- **The settlement checks are expected to be distributed to Class Members in September 2025. If your address changes before that time, please contact the Claims Administrator or Class Counsel to update your address and ensure that you receive your checks.**

- Once settlement checks are issued, they will be valid for 90 days. Class Members may request reissued checks up to 180 days after the last installment settlement checks are issued.

- Any money left over from the distribution of the Net Settlement Fund resulting from checks that were not deposited by Class Members within 180 days after the last settlement checks are issued or 50 days after the last reissued check is issued will be returned to Defendant.

- For more information about how individual settlement awards are calculated, please contact Class Counsel at Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601, New York, NY 10004, 212-688-5640, mike@jk-llp.com, or the Claims Administrator [INSERT CONTACT INFORMATION].

**If you do nothing, you will remain part of the case, be sent a payment and be bound by the terms of this Settlement.**

## 6. HOW CAN I COLLECT MY SHARE OF THE SETTLEMENT?

You do not need to do anything to receive the payment identified above. You will be sent a payment unless you exclude yourself by opting out of the settlement class.

If your address changes you are responsible for informing the Claims Administrator in order to receive your settlement check. You may inform Class Counsel or the Claims Administrator at [CLAIMS ADMINISTRATOR].

## 7. WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?

Upon the Effective Date, each Class Member, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases Defendant and related entities and individuals ("Releasees") from any and all wage and hour claims against Defendant and Releasees that have been brought or could have been brought under the New York Labor Law the New York Hospitality Industry Wage Order, the New York Wage Order for Miscellaneous Industries, the New York Minimum Wage Act, and the New York Wage theft Prevention Act, and or the regulations under such statutes, laws, and wage order, for work performed at or on behalf of City Winery Pier 57 in New York, New York, whether known or unknown, including any such claims for unpaid wages, overtime, tips, gratuities, service charges, administrative or other mandatory charges, failure to maintain and furnish employees with proper Rate of Pay notices and/or wage statements, claims to recover the tip credit, spread-of-hours payments, call-in payments, meal credit claims, uniform maintenance fees, meal break claims, liquidated damages, statutory penalties, and attorneys' fees and costs related to such claims, through the date that the Court issues an Order granting final approval of this Agreement.

In addition, if you cash your settlement check, you will forever and fully release Defendant and Releasees from any and all wage and hour claims against Defendant and Releasees that have been brought or could have been brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. and the regulations thereunder for work performed at or on behalf of City Winery Pier 57, including any such claims for unpaid wages, liquidated damages, improper taking of a tip credit, and attorneys' fees and costs related to such claims, through the date that the Court issues an Order granting final approval of this Agreement.

## 8. HOW DO I OPT OUT OF THE SETTLEMENT CLASS?

You have the option of opting out of the Settlement Agreement if you do not want to participate in the Settlement or be bound by the release of claims described above. To opt out of the Settlement Agreement you must do so by _____. If you do not opt out, you will be bound by the terms of the Settlement Agreement. To opt out, you must mail a signed letter with a statement indicating your intention to opt-out such as: "I opt out of the City Winery Pier 57 wage and hour settlement" postmarked no later than _____. You must include your name, address, and telephone number in the letter. If you choose to opt out, send your letter to:

[CLAIMS ADMINISTRATOR]

If you opt-out of the settlement, you will not be bound by the terms of the Settlement Agreement and you will be free to pursue your own claims against Defendant. However, you will not receive any payments pursuant to Settlement Agreement

## 9. WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?

If you have not opted out of the Settlement, and if you wish to present objections to the proposed Settlement at the Fairness Hearing, you must first do so in writing. If you object to the settlement and want to appear at the Fairness Hearing, you must say so in your written objection. You are not required to submit an objection. Written objections must be postmarked no later than _____ and must be sent to:

[CLAIMS ADMINISTRATOR]

Written objections must contain your name, address, and telephone number, must be signed by you, and must include reference to the matter of *Chapman v. City Winery – Pier 57 LLC, et al.,* Case No. 23 CV 2778. If you opt-out of the settlement, you may not object to the settlement. In addition, if you object to the Settlement Agreement and the Court rejects your objections, you will still be bound by the terms of the Settlement Agreement.

## 10. WHEN IS THE FAIRNESS HEARING?

A hearing before the Honorable Judge Margaret M. Garnett will be held on _____ at _____ at the United States District Court for the Southern District of New York, 40 Foley Square, New York, NY 10007 (the "Fairness Hearing"). The purpose of this hearing will be for the Court to determine whether the Settlement is fair, adequate, and reasonable and should be approved by the Court. The Court may take into account any comments or objections filed in accordance with the procedures described above.

You are not required to attend the Fairness Hearing. Class Counsel will answer questions the Court may have. However, you may attend at your own expense. If you timely send an objection, you don't have to come to Court to talk about it. If you exclude yourself from the settlement by opting out, you may not participate in the Fairness Hearing. You may also pay your own lawyer to attend, but it is not necessary.

## 11. HOW CAN I EXAMINE COURT RECORDS?

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings. For more detailed information, you are advised to refer to the underlying documents and papers on file with the Court.

Additionally, if you have the questions about this Notice or want additional information, you can contact Class Counsel at Joseph & Kirschenbaum LLP, 32 Broadway, Suite 601, New York, NY 10004, 212-688-5640, mike@jk-llp.com or the Claims Administrator at the address/phone number listed above.